# UNITED STATES DISTRICT COURT

for the
Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )  Case No.  22-MJ-763 |
| CELLULAR TELEPHONES CURRENTLY LOCATED AT | ) |
| THE FEDERAL BUREAU OF INVESTIGATION, 600 | ) |
| ARCH STREET, PHILADELPHIA, PENNSYLVANIA | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See attachment A.

located in the _____Eastern_____ District of _____Pennsylvania_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❐ contraband, fruits of crime, or other items illegally possessed;

❐ property designed for use, intended for use, or used in committing a crime;

❐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 111 | Assault on a federal officer. |
| 18 USC 922(g)(1) | Felon in possession of a firearm. |

The application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

❐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
/s Scott Friedenreich
*Applicant's signature*

_____
FBI SA Scott Friedenreich
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  _____05/11/2022_____

City and state: Philadelphia, PA

_____
/s/ Lynne A. Sitarski
*Judge's signature*

United States Magistrate Judge Lynne A. Sitarski
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>CELLULAR TELEPHONES CURRENTLY LOCATED AT THE<br>FEDERAL BUREAU OF INVESTIGATION, 600 ARCH STREET,<br>PHILADELPHIA, PENNSYLVANIA | )<br>)<br>)   Case No.    22-mj-763<br>)<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____Pennsylvania_____ *(identify the person or describe the property to be searched and give its location)*:

See attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____May 25, 2022_____ *(not to exceed 14 days)*
❑ in the daytime 6:00 a.m. to 10:00 p.m.      ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the duty magistrate.

❑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❑ for _____ days *(not to exceed 30)*   ❑ until, the facts justifying, the later specific date of _____ .

Date and time issued:      May 11, 2022 at 10:39 a.m.                    /s/ Lynne A. Sitarski
                                                                                                   *Judge's signature*

City and state:       Philadelphia, PA                         United States Magistrate Judge Lynne A. Sitarski
                                                                                              *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>  22-mj-763 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF CELLULAR TELEPHONES CURRENTLY LOCATED AT THE FEDERAL BUREAU OF INVESTIGATION, 600 ARCH STREET, PHILADELPHIA, PENNSYLVANIA | Case No. 22-mj-763 |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Scott Friedenreich, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—cellular telephones—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since December 2008.  I am currently assigned to the Violent Crimes Task Force, and through that assignment, I investigate various crimes, including commercial robberies and other violations of the Hobbs Act, carjackings, interstate transportation of stolen property, and other violations of federal law.  Prior to being assigned to the Violent Crimes Task Force, I was assigned to the Health Care Fraud Task Force for nine years.  In my capacity as a Special Agent, I have written, sworn to, and executed numerous search and arrest warrant affidavits.  I have directed cooperating witnesses to conduct consensual recordings and assisted other investigators in consensual recordings.  I have testified in grand jury and federal trials.  During the course of my investigations, I have subpoenaed and analyzed telephone toll and subscriber records and

obtained cell site data that was used as evidence in my investigations.  I have conducted searches of electronic devices, including cellular telephones, that were used as evidence in my investigations.

3.      The FBI is investigating DONZELL BURROW for shooting at a federal task force officer on March 26, 2022, in violation of Title 18, United States Code Section 111 and being a felon in possession of a firearm in violation of Title 18, United States Code Section 922(g)(1).

4.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

**IDENTIFICATION OF THE DEVICES TO BE EXAMINED**

5.      The property to be searched are the following electronic devices (SUBJECT DEVICES) that were seized via a federal search warrant (22-mj-731-1) executed at 2805 South 82nd Street, Apartment C, Philadelphia, Pennsylvania, the home of DONZELL BURROW, on May 4, 2022, and currently located at the Philadelphia Division of the FBI, 600 Arch Street, Philadelphia, Pennsylvania 19106:

   a.   A white Apple iPhone in a case with a robot design on the back IMEI 356711084074444;

   b.   A black Samsung cell phone in a red case IMEI 351767112398143;

   c.   A black Samsung cell phone with a cracked screen, IMEI 354229118883112;

   d.   A black Apple iPhone with a cracked screen and a cracked back IMEI 356430101147386.

6.      The applied-for warrant would authorize the forensic examination of the SUBJECT DEVICES for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7.      On March 26, 2022, at approximately 12:00 a.m., FBI Task Force Officers John Krewer and Vincent Ficchi were conducting surveillance of a male, hereinafter J.B., in the area of Rose's Tavern, 7365 Elmwood Avenue, Philadelphia, PA. The surveillance was related to an ongoing narcotics and auto theft investigation.  Officer Krewer saw J.B. and another male,[1] leave Rose's Tavern and get into a dark colored Dodge Ram, (SUBJECT VEHICLE 1).  Officer Krewer and Officer Ficchi followed SUBJECT VEHICLE 1 to the area of 8034 Brunswick Avenue, Philadelphia, Pennsylvania, at which point, J.B. got out of the car and went into a house.  Shortly thereafter, J.B. left the house and got back into the passenger side of SUBJECT VEHICLE 1.  The car drove back to the area of 7365 Elmwood Avenue, Philadelphia, Pennsylvania and Officer Krewer and Officer Ficchi eventually lost sight of SUBJECT VEHICLE 1.  At approximately 2:30 a.m., Officer Ficchi observed SUBJECT VEHICLE 1 in the area of 81st Street and Brunswick Avenue.  As Officer Ficchi approached the last location he had observed SUBJECT VEHICLE 1, Officer Ficchi slowed down and attempted to lower his driver's side window to better see SUBJECT VEHICLE 1. At the same time, Officer Ficchi heard two gunshots and his driver's side window shattered.  Officer Ficchi thought he had been shot and fled the area.  Officer Ficchi went to Pennsylvania Presbyterian Medical Center where he learned that he was not shot but sustained facial lacerations from broken glass.

---

[1] The other male was later identified through investigation as DONZELL BURROW (DOB: 04/14/1987), aka "DOM."

8.      Members of the Philadelphia Police Department's Crime Scene Unit responded to the scene of the shooting at approximately 4:00 a.m. and processed the scene.  The Crime Scene Unit recovered seven .45 caliber shell casings and three 9mm caliber shell casings spread within an approximate 10-foot radius.

9.      On March 26, 2022, at approximately 5:40 p.m., SUBJECT VEHICLE 1 was recovered in the area of 7912 Mars Place, Philadelphia, Pennsylvania.  SUBJECT VEHICLE 1 was identified as a black Dodge Ram bearing Pennsylvania temporary registration 4174773. SUBJECT VEHICLE 1 was previously reported stolen on June 11, 2021 and was subsequently entered into NCIC/PCIC as a stolen vehicle.

10.     Also on March 26, 2022, at approximately 5:15 p.m., J.B. was arrested[2] around the 8000 block of Lyons Avenue, Philadelphia, Pennsylvania.  Officers transported J.B. to the Philadelphia Police Department's Homicide Unit where he was interviewed regarding the shooting incident involving Officer Ficchi.

11.     Prior to the start of the interview, J.B. was advised of his/her rights.  J.B. waived his/her rights and agreed to speak to investigators without an attorney present.

12.     J.B. stated that he/she was with a man known as "DOM" in the black truck.

13.     J.B. knew that "DOM" lived in an apartment located at 2805 South 82nd Street in the upstairs unit on the left-hand side.  J.B. further advised that "DOM" likely had firearms in the apartment.  Following the interview, J.B. was transported to the Montgomery County Correctional Facility because of the warrant referenced in footnote 2.

---

[2] J.B. was arrested based on a Commonwealth of Pennsylvania arrest warrant issued on March 25, 2022 out of Montgomery County Pennsylvania.  The warrant charged J.B. with Theft By Unlawful Taking-Movable Prop (38208-AW-0000022-2022).

14.     On March 28, 2022, agents conducted open-source database checks on 2805 South 82nd Street, Philadelphia, Pennsylvania.  Results of the search revealed a resident by the name of DONZELL BURROW.  A criminal history query of BURROW revealed that BURROW was currently under supervision by Delaware County Adult Probation and Parole.[3]  Additional Delaware County Adult Probation and Parole database checks revealed an address of 2805 South 82nd Street, Apartment C, Philadelphia, Pennsylvania, and listed a call phone number for BURROW of 215-578-0495.

15.     On March 29, 2022, agents interviewed J.B. again at the Montgomery County Correctional Facility.  Prior to the interview, J.B. was advised of his/her rights.  J.B. agreed to speak to investigators without an attorney present.

16.     J.B. was shown a photograph of a male known to agents as DONZELL BURROW.  J.B. viewed the photograph and identified the male as "DOM."

17.     On March 30, 2022, federal search warrant number 22-MJ-534 was executed on T-Mobile. T-Mobile provided business records for BURROW's previous cellular telephone (215-578-0495) (BURROW'S PREVIOUS MOBILE NUMBER), which indicated that the phone last connected with the T-Mobile network on March 26, 2022, at 3:30 A.M., a short time after the criminal offense. In addition, analysis of the same business records indicated that BURROW traveled from the scene of the crime to the location where SUBJECT VEHICLE 1 was abandoned.[4]  Shortly after abandoning SUBJECT VEHICLE 1, records indicated that

---

[3] In an earlier affidavit sworn out on March 30, 2022, (22-mj-534) it was indicated that this information was obtained from Philadelphia County Adult Probation and Parole. It has since been determined that this information was actually derived from Delaware County Adult Probation and Parole.

[4] On April 1, 2022, agents obtained surveillance video from 7901 Mars Place, Philadelphia, Pennsylvania.  Review of the video revealed SUBJECT VEHICLE 1 parking

BURROW traveled to the Four Points By Sheraton Philadelphia Airport Hotel, 4105 Island Avenue, Philadelphia, Pennsylvania.  Based on my training and experience, I believe BURROW deliberately discontinued the use of his phone and traveled to the hotel to avoid law enforcement detection which is also suggestive of his knowledge and/or involvement in this criminal offense.

18.     On April 8, 2022, agents interviewed the front desk supervisor ("N.S.") of the Four Points By Sheraton, 4105 Island Avenue, Philadelphia, Pennsylvania.  N.S. was shown a photograph containing no identifying information of BURROW.  N.S. viewed the photograph and stated that he/she recalled that the male (BURROW) had checked into the hotel while N.S. was working on March 26, 2022.  Based on an audit N.S. performed of the guests at 3:00 a.m., N.S. stated that BURROW likely checked in before 3:00 a.m. N.S. stated that BURROW was by himself when he checked in and that BURROW would have utilized a credit card, as per the policy of the hotel.

19.     Additional review of DONZELL BURROW's Delaware County Adult Probation and Parole records revealed that ANTOINETTE LAMB is the current girlfriend of BURROW. The records included LAMB's phone number as 267-403-8380 (LAMB'S MOBILE NUMBER) and also revealed LAMB as BURROW's listed emergency contact.

**REVIEW OF VIDEO EVIDENCE**

20.     On March 28, 2022, agents went to Rose's Tavern to pull video from March 25, 2022 through the early morning of March 26, 2022, prior to the assault on Officer Ficchi.

21.     I have reviewed the video from Rose's Tavern, which shows BURROW, J.B. and LAMB inside Rose's Tavern from the evening of March 25, 2022 into the early morning of

---

before two males, believed to be J.B. and BURROW, exit SUBJECT VEHICLE 1.  Upon exiting the vehicles, J.B. and BURROW departed the area on foot in opposite directions.

March 26, 2022.  While inside the bar, BURROW is observed wearing a light colored jacket with "Anti-Stereotype" and "Don't Get Left Behind" printed on it,[5] a gray hooded sweatshirt, black pants, and black and white sneakers.

22.     On March 26, 2022 at approximately 12:57 a.m., BURROW and J.B. leave Rose's Tavern together and walk towards SUBJECT VEHICLE 1.  At approximately 1:00 a.m., SUBJECT VEHICLE 1 drives away.  LAMB remained at Rose's Tavern.

## ANALYSIS OF PHONE RECORDS

23.     Based on analysis of BURROW'S PREVIOUS MOBILE NUMBER (215-578-0495) provided by T-Mobile dating back to February 28, 2022, agents determined BURROW's most frequent contact was LAMB and BURROW contacted LAMB at 2:40 a.m. on March 26, 2022, minutes after the subject shooting.

24.     Based on analysis of cell phone records for LAMB'S MOBILE NUMBER provided by T-Mobile for the period of February 28, 2022 to April 13, 2022, agents determined that LAMB's most frequent contact prior to March 26, 2022 was BURROW's previous cellular telephone number (215-578-0495).  In reviewing phone records associated with LAMB'S MOBILE NUMBER for the period of March 26, 2022 to April 13, 2022, agents identified LAMB's most frequent contact as 445-208-7643 (BURROW'S MOBILE NUMBER), which is a number LAMB never had contact with prior to March 26, 2022.  LAMB's first contact with BURROW'S MOBILE NUMBER occurred on April 7, 2022, and LAMB has had frequent, consistent contact with BURROW'S MOBILE NUMBER every day during the period of April 7, 2022 to May 2, 2022.

---

[5] As discussed below, additional surveillance footage pulled from Rose's Tavern from April 17, 2022 through April 18, 2022 showed Burrow wearing this same distinctive jacket.

7

25.     Additionally, analysis of records between 215-578-0495 (BURROW's previous cellular telephone) and BURROW'S MOBILE NUMBER show at least 24 common telephone contacts. Based on my training and experience, I know that when two unique telephone numbers have the same most frequent contact and communicate with a large number of the same telephone numbers, they are typically operated by the same individual.

26.     According to records received by T-Mobile, there was no listed subscriber for BURROW'S MOBILE NUMBER, and the brand was Tracfone.  Tracfone is a prepaid wireless provider.  Based on my training and experience, individuals engaged in criminal activity and/or attempting to avoid apprehension by law enforcement will use prepaid phones to avoid detection. BURROW'S MOBILE NUMBER was activated on April 7, 2022.

27.     Based on the above information, including but not limited to: the fact that LAMB has been identified as BURROW's girlfriend; that the analysis of phone records determined both BURROW and LAMB were each other's most frequent contact prior to March 26, 2022; that BURROW stopped using BURROW'S PREVIOUS MOBILE PHONE shortly after the criminal offense under investigation; and that LAMB's new most frequent contact for the time period after the criminal offense under investigation was identified as BURROW'S MOBILE NUMBER, a number that LAMB never communicated with prior to the crime; and that the two telephone numbers had been in contact with at least 24 of the same telephone numbers,  I believe that BURROW is now utilizing cellular telephone number 445-208-7643 (BURROW'S MOBILE NUMBER).

28.     Based on the analysis of cell site data associated with BURROW'S MOBILE NUMBER obtained pursuant to a federal search warrant, agents determined that from approximately 11:05 p.m. on April 17, 2022, until approximately 1:42 a.m. on April 18, 2022,

BURROW'S MOBILE NUMBER was in the area of Rose's Tavern in Philadelphia, Pennsylvania (the same location where TFO Ficchi and TFO Krewer saw BURROW prior to the shooting).

29.     Based on this cell site data, on April 24, 2022, agents went to Rose's Tavern and obtained surveillance video that confirmed that BURROW arrived at Rose's Tavern on April 17, 2022 at approximately 11:11 p.m. and remained there until approximately 1:13 a.m. on April 18, 2022. BURROW was wearing the same light-colored jacket with "Anti-Stereotype" and "Don't Get Left Behind" printed on it that he was wearing on the night/early morning hours of March 26, 2022, prior to the assault on Officer Ficchi. Additionally, I observed BURROW in the video footage talking on a cellular phone while at Rose's Tavern.

30.     On April 27, 2022, agents confirmed that LAMB'S MOBILE NUMBER is the same device that LAMB was using on March 26, 2022. This is based on a review of the International Mobile Equipment Identity (IMEI) number associated with LAMB'S MOBILE NUMBER, which information was disclosed through the federal search warrants for historical and prospective cell site information (22-mj-650 and 22-mj-655). The IMEI number is a unique identifier associated with a mobile device, similar to a serial number. On March 26, 2022 and April 27, 2022, the IMEI associated with LAMB'S MOBILE NUMBER was identified as 356711084074444, which corresponds to an Apple iPhone 8 Plus.

31.     Cell site analysis of LAMB'S MOBILE NUMBER and BURROW'S MOBILE NUMBER obtained pursuant to a search warrant also revealed that the device is frequently located overnight in an area that includes 2805 South 82nd Street, Philadelphia, Pennsylvania.

32.     On April 28, 2022, BURROW reported to Delaware County Adult Probation and Parole.  BURROW provided 2802 S. 82nd Street, Apartment C, Philadelphia, Pennsylvania[6] as his address and 445-208-7643 (BURROW'S MOBILE NUMBER) as his phone number. BURROW also reported LAMB as his girlfriend and 267-403-8380 (LAMB'S MOBILE NUMBER) as her phone number.

### 2805 SOUTH 82ND STREET, APARTMENT C, PHILADELPHIA, PENNSYLVANIA

33.     A search of the database Clear revealed that LAMB was associated with 2805 South 82nd Street, Apartment C, Philadelphia, Pennsylvania. Records for LAMB'S MOBILE NUMBER, show that LAMB's phone is consistently in the vicinity of 2805 South 82nd Street, Philadelphia, Pennsylvania.

34.     On May 2, 2022, I went to the leasing office of Larchwood Gardens apartments, which oversees 2805 South 82nd Street and 2802 South 82nd Street.  I interviewed a property manager and a maintenance employee of the apartment complex.

35.     I showed the maintenance employee a photograph of BURROW.  The maintenance employee recognized BURROW and stated that he lives at 2805 S. 82nd Street, Apartment C, Philadelphia, Pennsylvania with LAMB. He also stated that both BURROW and LAMB drive a brown Chevrolet Trailblazer that had recently been shot.

36.     On May 3, 2022, the maintenance employee told me that unit C is on the second floor of building 2805 on the left hand side. Also on May 3, 2022, I saw video footage from the apartment complex from May 2, 2022, which showed BURROW leaving 2805 South 82nd Street.

---

[6] As discussed below, all other records and information, including information derived from interviews conducted by the staff of the apartment complex, verify that BURROW resides at 2805 South 82nd Street, Apartment C.

37.     The lease for 2805 S. 82nd Street, Apartment C, showed that LAMB was the head of the household since on or about May 26, 2021.

38.     I also reviewed the lease from 2802 S. 82nd Street, Apartment C, and the name on that lease is neither BURROW nor LAMB.

39.     While leaving the leasing office on May 2, 2022, I observed a brown Chevrolet Trailblazer with bullet holes parked on South 82nd Street close to building 2805.  The vehicle displayed a Delaware paper tag, XD768401.

40.     Based on the information detailed above, I applied for a search warrant to search the residence located at 2805 South 82nd Street, to search for evidence of the crime including the SUBJECT DEVICES.

41.     On May 4, 2022, the FBI executed a federal search and seizure warrant (22-mj-731-1) approved by the Honorable United States Magistrate Judge Elizabeth T. Hey in the Eastern District of Pennsylvania at the defendant's residence located at 2805 South 82nd Street, Apartment C, Philadelphia, PA.  The search warrant approved the seizure of the SUBJECT DEVICES.

42.     BURROW was located at 2805 South 82nd Street, Apartment C, Philadelphia, Pennsylvania during the execution of the search warrant and informed agents that he had a firearm under his bed. Agents subsequently recovered a .40 caliber Smith and Wesson SD40 VE, serial number FBL 1596, loaded with twelve .40 caliber rounds in the magazine,  under the defendant's bed—more specifically, under the mattress of the bed. Agents recovered a .380 caliber Smith and Wesson Bodyguard, serial number KDR 2951 in a box next to the defendant's

bed.  This gun was unloaded. Burrow was previously convicted of a felony in the Delaware County Court of Common Pleas and is prohibited from possessing firearms.[7]

43.    Agents also recovered clothing worn by BURROW on the night of the shooting and the SUBJECT DEVICES.

44.    BURROW was taken into custody and transported to the office of the FBI.  I advised BURROW of his *Miranda* rights. BURROW waived his *Miranda* rights in writing and agreed to be interviewed. During the interview, BURROW admitted that he purchased both firearms illegally on the street from the same person. A check on NCIC confirmed that both firearms were stolen.  BURROW denied shooting at the federal task force officer, however, he admitted to driving the vehicle that that the task force officer was surveilling on the night of the shooting.

45.    The Subject Devices are currently in the lawful possession of the FBI.   It came into the FBI's possession during the execution of the search warrant referenced above. Therefore, while the FBI might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

46.    The Device is currently at the Philadelphia Division of the FBI.  In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the FBI.

---

[7] Following execution of the search warrant, Burrow was arrested and charged by Complaint and Warrant with a violation of 18 U.S.C. § 922(g)(1) (22-mj-733).

## **TECHNICAL TERMS**

47.    Based on my training and experience, I use the following technical terms to convey the following meanings:

a.   Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

c.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

d.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

e.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated

14

"GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite

contains an extremely accurate clock.  Each satellite repeatedly transmits by radio

a mathematical representation of the current time, combined with a special

sequence of numbers.  These signals are sent by radio, using specifications that

are publicly available.  A GPS antenna on Earth can receive those signals.  When

a GPS antenna receives signals from at least four satellites, a computer connected

to that antenna can mathematically calculate the antenna's latitude, longitude, and

sometimes altitude with a high level of precision.

f.   PDA:  A personal digital assistant, or PDA, is a handheld electronic device used

for storing data (such as names, addresses, appointments or notes) and utilizing

computer programs.  Some PDAs also function as wireless communication

devices and are used to access the Internet and send and receive e-mail.  PDAs

usually include a memory card or other removable storage media for storing data

and a keyboard and/or touch screen for entering data.  Removable storage media

include various types of flash memory cards or miniature hard drives.  This

removable storage media can store any digital data.  Most PDAs run computer

software, giving them many of the same capabilities as personal computers.  For

example, PDA users can work with word-processing documents, spreadsheets,

and presentations.  PDAs may also include global positioning system ("GPS")

technology for determining the location of the device.

48.   The Subject Devices are wireless telephones.  Based on my training and

experience, as well as the training and experience of other agents, and from consulting the

manufacturer's advertisements and product technical specifications available online

15

www.apple.com and www.samsung.com a wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used primarily for voice communication through adio signals.  These telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include but are not limited to: storing names and phone numbers in electronic "address books;" sending, receiving, and storing email, voice messages and text messages[8]; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device and for mapping and navigation features.  Based on my training and experience, I am aware that people who engage in illegal activities such as illegally purchasing and possessing firearms and shootings have been known to use some or all of these features in furtherance of their illegal activities.

49.     Furthermore, based on my training and experience, I know that electronic devices such as cell phones can store information for long periods of time.  Even when a user deletes

---

[8] Based on my training and experience, I am aware that, among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers.  This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging" or "wireless messaging" (collectively referred to in this affidavit as "text messages").

information from a device, it can sometimes be recovered with forensic tools.  Similarly, things that have been viewed via the internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

50.     Based on my training and experience, I know that people who engage in crimes, including shootings and illegally purchasing and possessing firearms, will often communicate with their coconspirators and/or accomplices by way of cellular telephone (including via text message) before, during, and after the criminal activity.  Further, I am aware that people who engage in such crimes often possess photographs (including in their phones) of themselves and their coconspirators/accomplices; clothing worn during the crimes; and weapons and other items used and purchased.  I also know from my training and experience that criminals, including those who engage in shootings and illegally purchasing and possessing firearms, often have multiple phones to facilitate their commission of illegal activities while attempting to thwart identification by law enforcement through the use of multiple phones or "burner" phones which cannot be traced back to an individual.

51.     Through my training and experience, I am aware that individuals who commit crimes, including shootings, assaults, and illegally purchasing and possessing firearms, use cell phones in a variety of ways in connection with the crimes. I am aware that they communicate with each other before, during, and after the crime.  I am aware that such individuals use their cell phones to take pictures of the firearms purchased and possessed and used during assaults. Further, they frequently exchange messages with co-conspirators about purchasing weapons and the shooting incidents.  Finally, I am aware that such individuals use their cell phones to conduct online searches to search for news releases and videos of the shootings after they are committed.

17

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

52.     Based on my knowledge, training, and experience, I know that the SUBJECT DEVICES can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

53.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review

18

team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

54.  *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the SUBJECT DEVICES consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

55.  *Manner of execution.*  Because this warrant seeks only permission to examine the SUBJECT DEVICES which are already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

56.  Based on the foregoing, probable cause exists to believe that DONZELL BURROW has committed violations of 18 U.S.C. § 111 (assault on a federal officer), and 18

U.S.C. § 922(g)(1) (felon in possession of a firearm), and that evidence of these violations exist

in the SUBJECT DEVICES.

*/s Scott Friedenreich*
SA Scott Friedenreich
Federal Bureau of Investigation

Subscribed and sworn
to before me on_____May 11th_____, 2022

_____/s/ Lynne A. Sitarski_____
The Honorable Lynne A. Sitarski
UNITED STATES MAGISTRATE JUDGE

20

## ATTACHMENT A

The property to be searched are the following electronic devices (SUBJECT DEVICES) that were seized via a federal search warrant (22-mj-731-1) executed at 2805 South 82nd Street, Apartment C, Philadelphia, Pennsylvania, the home of DONZELL BURROW, on May 4, 2022, and currently located at the Philadelphia Division of the FBI, 600 Arch Street, Philadelphia, Pennsylvania 19106:

    a. A white Apple iPhone in a case with a robot design on the back IMEI 356711084074444;

    b. A black Samsung cell phone in a red case IMEI 351767112398143;

    c. A black Samsung cell phone with a cracked screen, IMEI 354229118883112;

    d. A black Apple iPhone with a cracked screen and a cracked back IMEI 356430101147386.

This warrant authorizes the forensic examination of the SUBJECT DEVICES for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the SUBJECT DEVICES described in Attachment A that relate to
violations of Title 18, United States Code Sections 111 and 922(g)(1) that involve DONZELL
BURROW, including:

      a.   Evidence of user attribution showing who used or owned the SUBJECT

          DEVICES at the time the things described in this warrant were created, edited, or

          deleted, such as logs, phonebooks, saved usernames and passwords, documents,

          and browsing history;

      b.   Evidence of the crimes detailed in this affidavit, including, but not limited to,

          SMS and MMS Messages, social message chat conversations, photographs,

          videos, device locations and internet searches;

As used above, the terms "records" and "information" include all of the foregoing items
of evidence in whatever form and by whatever means they may have been created or stored,
including any form of computer or electronic storage (such as flash memory or other media that
can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored
information seized or copied pursuant to this warrant in order to locate evidence, fruits, and
instrumentalities described in this warrant.  The review of this electronic data may be conducted
by any government personnel assisting in the investigation, who may include, in addition to law
enforcement officers and agents, attorneys for the government, attorney support staff, and
technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the seized or
copied electronic data to the custody and control of attorneys for the government and their
support staff for their independent review.

2